IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| BENJAMIN CROSSWHITE | ) |
| Plaintiff, | ) |
| v. | ) Case 6:21-cv-00015-NKM |
| THOMSON REUTERS CORP. | ) |
| Defendant. | ) |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Benjamin Crosswhite ("Plaintiff"), by counsel, pursuant to Local Civil Rule 11(c)(1), respectfully submits this Memorandum in Opposition to the motion to dismiss [*ECF No. 18*] filed by defendant, Thomson Reuters Corp. ("Defendant").

## I. INTRODUCTION

"Freedom of the press under the First Amendment does not include absolute license to destroy lives or careers." *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 170 (1967) (Warren, C.J., Concurring). The press has no "special privilege to invade the rights and liberties of others." *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972). The press has no right to "invent facts" or to "comment on the facts so invented" and, thereby, convince readers that the invented facts are true. Simply put:

> "[l]iberty of the press is not license, and newspapers have no privilege to publish falsehoods or to defame under the guise of giving the news. It is held that the press occupies no better position than private persons publishing the same matter; that it is subject to the law, and if it defames it must answer for it."

1

*Williams Printing Co. v. Saunders*, 113 Va. 156, 73 S.E. 472, 477 (1912) (numerous citations and quotations omitted); *Dexter v. Spear*, 7 F. Cas. 624-625 (1ˢᵗ Cir. 1825) (Story, J.) ("No man has a right to state of another that which is false and injurious to him. A fortiori no man has a right to give it a wider and more mischievous range by publishing it in a newspaper. The liberty of speech, or of the press, has nothing to do with this subject. They are not endangered by the punishment of libellous publications. The liberty of speech and the liberty of the press do not authorize malicious and injurious defamation. There can be no right in printers, any more than in other persons, to do wrong.").

Today, because of social media, the power of the press has reached an apogee. "The increased power of the press is so dangerous today because we are very close to one-party control of these institutions." *Tah v. Global Witness Publishing, Inc.*, 2021 WL 1045202, * 17 (D.C. Cir. Mar. 19, 2021) (Silberman, J., Dissenting) ("Two of the three most influential papers (at least historically), *The New York Times* and *The Washington Post*, are virtually Democratic Party broadsheets. And the news section of *The Wall Street Journal* leans in the same direction. The orientation of these three papers is followed by *The Associated Press* and most large papers across the country (such as the *Los Angeles Times*, *Miami Herald*, and *Boston Globe*). Nearly all television—network and cable—is a Democratic Party trumpet. Even the government-supported National Public Radio follows along."). In this case, Reuters – a well-known Democratic Party "broadsheet" – abdicated its role as an impartial reporter of "facts". *Sprouse v. Clay Communications, Inc.*, 158 W. Va. 427, 211 S.E.2d 674 (W. Va. 1975) (two weeks before gubernatorial election, newspaper foreswore its role as an impartial reporter of facts and

2

joined with political partisans in an overall plan or scheme to discredit the character of a political candidate by publishing a series of articles that raised an implication of wrongdoing by the candidate in connection with certain real estate transactions). Reuters published and then intentionally republished defamatory statements about Plaintiff as part of a broad and continuing effort to smear the former president of Liberty University, Jerry Falwell, Jr. ("Falwell"), and to sensationalize the news. *Tomblin v. WCHS-TV8*, 2011 WL 1789770, at * 5 (4th Cir. 2011) (unpublished) ("on the question of whether WCHS-TV8 deliberately or recklessly conveyed a false message to sensationalize the news and thus to provide factual support for a finding of malice, there are disputed facts").

Plaintiff, a private individual, filed this action on March 25, 2021, alleging a claim of defamation by implication against Reuters arising out of Reuters' republication[1] within the past year of statements which, viewed as a whole, implied that Plaintiff participated in a corrupt real estate deal with Falwell – a deal that could cost Liberty University its tax-exempt status. [*ECF. No. 1 ("Compl."), ¶¶ 13, 14, 15, 16, 18, 19, 20, 21, 22, 23, 24, 25, 27, 28, 29 30, 31, 32, 33*]. The matter is before the Court on Reuters motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, Reuters' motion should be DENIED.

---

[1] Reuters is liable for each republication of its defamatory statements. *Dragulescu v. Va. Union Univ.*, 223 F.Supp.3d 499, 512 (E.D. Va. 2016) ("Under Virginia law, a defendant may be liable in defamation for a third-party republication 'if the republication was the natural and probable consequence of the original publication or if defendants actually or presumptively authorized its republication.'") (quoting *Watt v. McKelvie*, 219 Va. 645, 649, 248 S.E.2d 826 (1978) (citing *Weaver v. Home Beneficial Co.*, 199 Va. 196, 199-200, 98 S.E.2d 687 (1957) ("where the words declared on are slanderous per se their repetition by others is the natural and probable result of the original slander."))); *Moore v. Allied Chemical Corp.*, 480 F.Supp. 364, 376 (E.D. Va. 1979) (same).

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F,2d 8943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a plaintiff's complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To this end, a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Coleman v. Md. Ct. of Apps.*, 626 F.3d 187, 190 (4th Cir. 2010) (internal quotation marks omitted). A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In ruling on a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff, with all reasonable inferences being drawn in plaintiff's favor. *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, (4th Cir. 2011). A 12(b)(6) motion should only be granted if, "after accepting all well-pleaded allegations ... as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim entitling [her] to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

In assessing whether a plaintiff has stated a cause of action for defamation, it is important to observe that while the Federal Rules require more specific pleading in certain cases, defamation cases are not among them. *See Hatfill v. New York Times*, 416 F.3d 320, 329 (4th Cir. 2005) ("the usual standards of notice pleading apply in defamation cases.").

### III. DISCUSSION

Under Virginia law, the elements of a claim of defamation are "(1) publication of (2) an actionable statement with (3) the requisite intent."[2] *Tharpe v. Saunders*, 285 Va. 476, 737 S.E.2d 890, 892 (2013).

**A.** ***Pleading Defamation In Virginia***

In *Federal Land Bank of Baltimore v. Birchfield*, the Virginia Supreme Court held that "[g]ood pleading requires that the exact words spoken or written must be set out in the declaration *in haec verba*. Indeed, the pleading … must purport to give the exact words." 173 Va. 200, 215, 3 S.E.2d 405 (1939) (quoted in *Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 134, 575 S.E.2d 858 (2003) (the complaint "gives the exact words allegedly used by Gross, Temple, King, and Terrebone, or those acting at their direction, i.e., that the doctors [plaintiffs] 'abandoned their patients' and that there were 'concerns about their competence.'")). Significantly, the element of publication may be generally averred. A defamation plaintiff in Virginia is ***not required*** to identify "to

---

[2] The requisite intent a plaintiff must prove in a defamation action depends upon the plaintiff's status as a private individual or public figure, and the damages sought. Reuters concedes that Plaintiff, a private individual, has adequately alleged *both* that Reuters acted negligently in failing to ascertain the facts on which its publications were based *and* that Reuters acted with actual malice sufficient to support Plaintiff's claim for punitive damages. [*Complaint, ¶¶ 32, 33*].

5

whom the statements were made and under what circumstances." Details "such as the time and place of the alleged communication, the name of a defendant's agent, and the names of the individuals to whom the defamatory statement was purportedly communicated can be provided in a bill of particulars if not included in a plaintiff's pleading". *Fuste*, 265 Va. at 134, 575 S.E.2d at 862 (citing *Federal Land Bank*, 173 Va. at 217, 3 S.E.2d at 411)).[3]

Here, Plaintiff alleges each element of a claim of defamation. In addition, although not an element of his case, Plaintiff clearly and expressly alleges that the false and defamatory statements were published within the year preceding the filing of this action. [*Complaint, ¶¶ 23, 27, 28*].

    **1.**     <u>***Plaintiff Has Plausibly Alleged Republication***</u>

It has long been stated that "[t]alebearers are as bad as talemakers". *Harris v. Minvielle*, 19 So. 935, 928 (La. Ct. App. 1896). Virginia follows the "republication rule". Under the republication rule, "each successive publication of an old or preexisting defamatory statement gives rise to a new cause of action under Virginia law." *Dragulescu v. Va. Union Univ.*, 223 F.Supp.3d 499, 509 (E.D. Va. 2016); *see id. WJLA-TV v. Levin*, 264 Va. 140, 153, 564 S.E.2d 383 (2002) ("each publication of a defamatory statement is a separate tort and, indeed, generally subsequent republications of such a statement are

---

[3] Reuters chose not to move for a more definite statement pursuant to Rule 12(e). All the circumstances of publication and republication can be obtained through simple discovery. *See Schur v. Sprenkle*, 2013 WL 8037927, at * 5 (Richmond Cir. 2013) (the acts or omissions, including the time, manner, and place of them, alleged to be breaches by Defendant of the various provisions listed in Plaintiffs First Amended Complaint "can be determined through discovery.").

separate torts").[4]  Republication occurs when the original defamatory statement is "affirmatively reiterated" **or** redistributed with the goal of reaching a new audience. *Eramo v. Rolling Stone, LLC*, 209 F.Supp.3d 862, 879 (W.D. Va. 2016) (citing *Clark v. Viacom Int'l, Inc.*, 617 Fed.Appx. 495, 505 (6th Cir. 2015) and *In re Davis*, 347 B.R. 607, 611 (W.D. Ky. 2006)); *id. Gilmore v. Jones*, 370 F.Supp.3d 630, 658 fn. 30 (W.D. Va. 2019) (article and video published on the website www.infowars.com was republished by Alex Jones on his YouTube channel); *Doe v. Roe*, 295 F.Supp.3d 664, 670-671 (E.D. Va. 2018) ("where the same defamer communicates a defamatory statement on several different occasions to the same or different audience, each of those statements constitutes a separate publication") (citing Restatement (Second) of Torts § 577A (1977)).

The leading case on republication in Virginia is *Weaver v. Beneficial Finance Co.*, 199 Va. 196, 98 S.E.2d 687 (1957). In *Weaver*, the defendants wrote a libelous letter about the plaintiff, and published the letter to plaintiff's employer. The letter was later republished to the company's promotion board. 199 Va. at 198, 98 S.E.2d at 690. The trial court sustained a plea of the statute of limitations and dismissed plaintiff's complaint. The Virginia Supreme Court reversed. The Supreme Court held that:

> "It is well settled that the author or originator of a defamation is liable for a republication or repetition thereof by third persons, provided it is the natural and probable consequence of his act, or he has presumptively or actually authorized or directed its republication. This is based upon the principle that such republication constitutes a new cause of action against the original author.
> …

---

[4] To ameliorate the "chilling effect" that the republication rule would have on the reporting of controversial matters of public interest, Courts have recognized that newspapers enjoy the privilege to fairly and accurately report on judicial and governmental proceedings. *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1299 (D.C. Cir. 1988).

> Under the weight of authority the author of a libel or slander is not liable for its voluntary and unjustifiable repetition, without his authority or request, by others over whom he has no control, either as on a direct cause of action or by way of aggravation of damages, and such repetition cannot be considered in law a necessary, natural and probable consequence of the original slander or libel. But the rule has one important qualification. It is a general principle that everyone is responsible for the necessary consequences of his act, and it may be that the repetition of a slander or libel may be the natural consequence of the original publication, in which case the author of the original defamatory matter would be liable. **<u>And where the words declared on are slanderous per se their repetition by others is the natural and probable result of the original slander</u>**.'"

199 Va. at 199-200, 98 S.E.2d at 690 (emphasis added); *see also Wuchenich v. Shenandoah Memorial Hospital*, 215 F.3d 1324 (Table), at * 16 (4th Cir. 2000) ("In sum, we hold the district court properly dismissed all portions of Dr. Wuchenich's claim alleging defamation except for the portion seeking redress against SMH for the ongoing publication (knowingly allowed and expected by SMH) in the National Practitioner's Data Bank that SMH had suspended Dr. Wuchenich's medical staff privileges for professional incompetency, and for SMH's publication of the false statement that Dr. Wuchenich is professionally incompetent during the post June 1, 1997 portion of the Board of Medicine's investigation of the allegations that lead to the suspension of Dr. Wuchenich's medical staff privileges at SMH."); *Moore v. Allied Chemical Corp.*, 480 F.Supp. 364, 376 (E.D. Va. 1979) ("Count V is not time-barred insofar as plaintiff seeks to hold Allied liable for republications of the allegedly defamatory statement occurring on or after July 1, 1976. If he can show that the statement was defamatory, he may be able to show that the republications of the statement were the natural and probable result of the original publication.").

Here, Plaintiff alleges that Reuters republished the defamatory statements within the past year, such that this action is timely. As an example of such republication,

paragraph 23 of the complaint expressly references an August 24, 2020 tweet by a Reuters' employee. [https://twitter.com/ldelevingne/status/1297949389605011457].  The Reuters tweet does far more than provide a "mere hyperlink" to the August and September Articles. *Cf. Lokhova v. Halper*, 995 F.3d 134, 143 (4th Cir. 2021) ("The public policy supporting the single publication rule and the traditional principles of republication dictate that a mere hyperlink, without more, cannot constitute republication.").[5]  The Reuters tweet expressly juxtaposes and connects the Falwells' notorious dealings with the "pool boy" with the false statement that Falwell "steered" the land deal to benefit Plaintiff, implying that Plaintiff, like the "pool boy", received benefits because of a corrupt and illegal deal or illicit relationship with Falwell.  The Reuters tweet also goes further than a "mere hyperlink" because it "tags"[6] other

---

[5]  In his dissenting opinion in *Lohkova*, Judge Quattlebaum found that the New York Times' inclusion of its May 18, 2018 article as a hyperlink in its April 9, 2019 article was a republication that resets the statute of limitations. 995 F.3d at 152 ("As alleged, The New York Times hyperlinked Goldman's earlier article not as a source, but rather via the provocative phrase 'accuse the F.B.I.'  It is, therefore, reasonable to infer that the hyperlink was not used like a footnote at all.  Rather, it was used as 'clickbait,' drawing readers to another New York Times article with a mere click of the mouse.  Here, Lokhova has plausibly alleged that rather than using the hyperlink as a citation, The New York Times used it as a means of redistributing previous material with the goal of expanding its readership … Accepting Lokhova's allegations as true, The New York Times decided to use hyperlink technology in its newer article to expand exposure of its old article.  In so doing, it republished the old article and, thus, should be subject to a new statute of limitations.  For this reason, I dissent in part.").  The same is true in this case.  In 2020, Reuters used the hyperlinks to the August and September Articles as "clickbait" to redistribute the previous material with the goal of expanding its readership.

[6]  "Tags" are tweets that contain another account's username, preceded by the "@" symbol.  For example: "**@Reuters**".  "Tagging" someone is a way of including them in a conversation.  Tags appear on the sender's profile page of public tweets *and* in the recipient's notifications tab *and* will appear on the recipient's home timeline view if the recipient of the tag follows the sender.  Anyone who follows the sender of a tag, *i.e.* anyone who follows **@ldelevigne**, will also see the tweet in their home timeline. [https://help.twitter.com/en/using-twitter/types-of-tweets].  By tagging others, the Reuters employee republished the August and Article to over 23,000,000 third-parties.

Twitter accounts, including @AramRoston, @Reuters and @specialreports, further evidencing an intent to republish the old content to new target audiences. [*Complaint, ¶¶ 22, 23, 25, 29*].

In *Wiswell v. VerticalScope, Inc.*, the District Court denied the defendant's motion for judgment on the pleadings. The Court declined to adopt a bright-line rule that hyperlinks can *never* constitute republications. Rather, the Court held that "the inquiry should turn on the context in which the link is made or posted." The Court looked at the "core rationale behind the republication exception. In its traditional fact setting, the exception is animated to a considerable extent by whether a new audience is reached." In denying the defendant's motion for judgment on the pleadings, the Court found as follows:

> "Here, because the link was made in what appears to be an entirely new thread, some six years later, it may plausibly have reached a different audience than the original thread. Also, a much stronger analogy can be drawn between new print publications, and posting a new message thread on a forum, as compared to merely making technical adjustments to a website. Although the Court cannot make a final determination at this point, based on the limited record before it, judgment under Rule 12(c) regarding the 2004 thread is improper at this time for the reasons given above."

2011 WL 13324271, at * 2-3 (W.D. Tex. 2011). In further denying the defendant's motion for summary judgment, the Court found that the issue whether a new audience was reached by the hyperlink was a "fact issue" for the Jury:

> "The Court finds this is a fact issue, given that (1) the websites, though linked, are at different web addresses, apparently with separate login and membership databases, (2) each site has its own forum structure, including separate headings and categories for threads, (3) threads posted on one website apparently do not appear on the other, and (4) the two forums discuss different types of motorcycle."

2012 WL 13136295 at * 4.

10

Plaintiff's allegations that Reuters republished the August and September Articles must be accepted as true and all inferences must be resolved in Plaintiff's favor at this stage of the proceeding. Accordingly, Reuters' motion to dismiss on the ground that this case is barred by the statute of limitations should be DENIED.

### 2. *The Statements Are Of or Concerning Plaintiff*

Defamatory statements are only actionable if they are "of or concerning" the plaintiff. *Cave v. Shelor*, 16 Va. (2 Munf.) 193, 193 (1811) (footnote omitted); *accord Gazette, Inc. v. Harris*, 229 Va. 1, 37, 325 S.E.2d 713 (1985). The "of or concerning" test does not require a defamation plaintiff to be named, but instead tolerates "personal imputation." *Ewell v. Bouthwell*, 138 Va. 402, 415, 121 S.E. 912 (1924). Statements which do not facially refer to the plaintiff may be actionable if "the allegations and supporting contemporaneous facts connect the libelous words to the plaintiff," if those who know or know of the plaintiff would "believe that the [statement] was intended to refer to him," or if the statement contains "a description or reference to him." *Gazette, Inc.*, 229 Va. at 37, 325 S.E.2d at 738. "In short, it matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory. Accordingly ... courts applying Virginia defamation law should consider not only the words themselves but also the inferences fairly attributable to them." *Hatfill*, 416 F.3d at 331 (internal quotation marks and citations omitted).

The statements at issue in this case refer to Plaintiff by name. [*Complaint, ¶ 20*]. Plaintiff is also described as "a 23-year-old recent Liberty graduate", Falwell's "personal trainer", "Falwell's fitness trainer" and/or "the trainer". The statements on their face apply to Plaintiff. At the very least, the question whether Reuter's publications are of or

11

concerning Plaintiff "is a matter for the jury to decide." *Fornshill v. Ruddy*, 891 F.Supp. 1062, 1070 (D. Md. 1995, *aff'd*, 89 F.3d 828 (4th Cir. 1996) (quoted and cited in *Eramo v. Rolling Stone, LLC*, 2016 WL 5942328, at * 1 (W.D. Va. 2016)).

### 3. *Defendants' Statements Are Actionable*

To be actionable, a statement must be "both false and defamatory." *Goulmamine v. CVS Pharmacy, Inc.*, 138 F.Supp.3d 652, 659 (E.D. Va. 2015) (quoting *Jordan v. Kollman*, 269 Va. 569, 575, 612 S.E.2d 203 (2005)). At the motion to dismiss stage in a defamation case, "a court must accept as false any statements which the Complaint alleges to be false." *Id.* (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)). "Because the Court presumes falsity at this stage, the key actionability question … is whether the statements referenced in the Complaint are defamatory." *Goulmamine*, 138 F.Supp.2d at 659.

Defamatory language "tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Schaecher v. Bouffault*, 290 Va. 83, 92, 772 S.E.2d 589 (2015) (citation omitted); *see Adams v. Lawson,* 58 Va. (17 Gratt.) 250, 255–56 (1867) ("It is sufficient if the language tends to injure the reputation of the party, to throw contumely, or to reflect shame and disgrace upon him, or to hold him up as an object of scorn, ridicule or contempt."); *see also Moseley v. Moss,* 47 Va. (6 Gratt.) 534, 538 (1850) (actionable defamation "tend[s] to make the party subject to disgrace, ridicule, or contempt")). A statement is defamatory *per se* if it "impute[s] to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the

12

discharge of the duties of such an office or employment" or if the statement prejudices a person in his employment or profession. *Tronfeld v. Nationwide Mutual Insurance Company*, 272 Va. 709, 713, 636 S.E.2d 447 (2006).

In *Carwile v. Richmond Newspapers*, the Virginia Supreme Court emphasized that "[i]n order to render words defamatory and actionable, it is not necessary that the defamatory charge be in direct terms but it may be made indirectly, and it matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory." 196 Va. 1, 7, 82 S.E.2d 588 (1954); *see id. Hyland v. Raytheon Tech. Serv. Co.*, 277 Va. 40, 47, 670 S.E.2d 746 (2009) ("Defamatory statements may include statements made by inference, implication, or insinuation.") (citations omitted); *James v. Powell*, 154 Va. 96, 106, 152 S.E. 539 (1930) (quoting *Adams v. Lawson*, 17 Gratt. (58 Va.) 250 (1867) ("It is not necessary to make a writing libelous that the imputations should be made in the form of positive assertion. It is equally so if they are expressed in the form of insinuation, provided the meaning is plain.").

Virginia recognizes both express libel and defamation by implication. "Defamation by implication arises, not from what is stated, but from what is implied when a defendant

> (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, [such that] he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct."

*Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 828 (Iowa 2007) (quoting Dan B. Dobbs, *Prosser & Keeton on the Law of Torts* § 116, at 117 (Supp. 1988)); *see also* Restatement (Second) of Torts § 563 cmt. *c*, at 163 (1965) ("The defamatory imputation may be made by innuendo, by figure of speech, by expressions of belief, by allusion or

13

by irony or satire."); *see also Chapin*, 993 F.2d at 1092-1093 (concluding defamatory meaning may be communicated by direct reference or by implication).

Viewed as a whole and in the broader context of the controversies surrounding Falwell in 2019 and 2020, the August and September Articles falsely imply that Plaintiff participated with Falwell in a corrupt, sham land deal that conferred an unlawful or improper benefit on Falwell's "young personal trainer". The defamatory gist of the Reuters' Articles is that Plaintiff engaged in a real estate deal that, according to a prominent Rhode Island Congressman, could cost Liberty University its tax-exempt status. Reuters juxtaposed a series of facts so as to falsely imply a defamatory connection between them, including a connection and/or similarity between the Falwells' notorious dealings with the Fallwell's "pool boy" and "personal trainer". As evidenced by the responses on Twitter, the Articles clearly conveyed the defamatory meaning alleged by Plaintiff in his complaint. [*Complaint,* ¶¶ *14, 16, 18, 19, 21, 22, 23, 25, 29, 30*]. Reuters' statements carry the requisite defamatory "sting" because they "tend so to harm the reputation of [Plaintiff] as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Chapin*, 993 F.2d at 1092 (citing Restatement (Second) of Torts § 559)).

Reuters reads the Articles in a way robs the Articles of context, essentially writes Plaintiff out of the shady land deal, and ignores the meaning that was conveyed to readers. The Articles are not "only" about Falwell. The accusation that Plaintiff, a small business entrepreneur in Lynchburg, Virginia, participated in a corrupt, shady land deal that could affect the tax-exempt status of Liberty University is defamatory.

### 4. *Defendants' Statements Are Materially False*

As to the element of falsity, "[t]he common law of libel takes but one approach ... regardless of the form of the communication. It overlooks minor inaccuracies and concentrates upon substantial truth." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-517 (1991). "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." *Id.* Therefore, "[a] statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 517.

In his complaint, Plaintiff alleges that Reuters' statements were not only false, but materially false. [*Complaint, ¶¶ 24, 25, 29*].[7] Contrary to Reuters' false implications and insinuations, Plaintiff paid fair market value to Liberty University for the property he purchased in 2016. The building was a huge financial drain on Liberty. Liberty sold the aged building (and its substantial roofing and other problems) to Plaintiff for its tax assessed value and Plaintiff's commitment to maintain the property. Liberty financed the purchase at a market rate. Liberty was selling to a buyer they already knew and trusted, which is why Liberty paid the rent for nine years upfront. And, although Liberty paid upfront rent, the University had the right to use the tennis courts to the exclusion of Plaintiff's paying customers. It was not a "sweet" deal for Plaintiff. It was a normal business transaction on slightly unfair terms to Plaintiff. The materiality of Reuters' false and defamatory statements did not go unnoticed by experts in the community. [*See* https://wset.com/news/local/falwells-trainer-lawyers-defend-business-deal-to-purchase-

---

[7] In its motion, p. 10, Reuters asserts that "Plaintiff admits that the statements in the Article are "facially true", citing paragraph 22 of the complaint. This is inaccurate. Plaintiff alleges that even if Reuters' statements are facially true, the statements convey a defamatory implication about Plaintiff.

15

lu-million-dollar-building ("But without all this background information, real estate lawyer of over 40 years, Grimes Creasy, says, he too might have questioned the deal like so many others."). *See, e.g., Tholen v. Assist America, Inc.*, 970 F.3d 979, 985 (8th Cir. 2020) (where defendant attributed wrongdoing to plaintiff, "there is a factual dispute over whether the challenged statements in the case study are materially false"); *Pan Am. Systems, Inc. v. Atlantic Northeast Rails and Ports, Inc.*, 804 F.3d 59, 73 (1st Cir. 2015) ("All that is left to do then is compare the challenged defamatory comment … with what we take as true at this stage of the case (that plaintiffs never lost railcars carrying hazardous materials, even temporarily). And having done this, we conclude that a sensible juror could find that a more precise explication of the TIH issue would have improved plaintiffs' public reputation—meaning we must vacate the grant of summary judgment on this article."); *Murphy v. Boston Globe, Inc.*, 449 Mass. 42, 865 N.E.2d 746, 758 (Mass. 2007) ("The jury were warranted in finding that the portion of the story quoting the plaintiff as saying, 'She is [fourteen]. She got raped. Tell her to get over it,' would lead one to believe the judge was indifferent, and even callous, to crime victims who appeared before him, and especially demeaning to the rape victim. The difference between the statement attributed to the plaintiff in the Herald articles, and the statement that Crowley testified he told Wedge the plaintiff had made, cannot, as matter of law, be characterized as a minor discrepancy").

**B.**     ***There Are No Grounds For Any Sanctions***

Plaintiff filed this action in good faith after he was smeared by Reuters publication and republication of false statements about Plaintiff's purchase of land from Liberty University. The fact that Plaintiff honestly disagrees with Reuters and refused to

16

dismiss his case after Reuters' lawyers threatened to file a sanctions motion does not show any bad faith. Indeed, Reuters points to nothing in the record that would show bad faith on the part of Plaintiff that would warrant a drastic award of sanctions for the filing of a complaint. Reuters' request for an award of fees and costs pursuant to § 1927 and the Court's inherent authority it meritless, and it should be denied. *See, e.g., Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 fn. 25 (4th Cir. 1991) (finding of bad faith is "a precondition to the imposition of fees" under 28 U.S.C. Section 1927 or the Court's inherent power); *Stradtman v. Republic Services, Inc.*, 2015 WL 4668402, at * 4 (E.D. Va. 2015) ("Though Stradtman ultimately could not convince this Court that the law was otherwise, that does not mean that Stradtman's arguments advocating for the change in the law were in bad faith, i.e., made for the purpose of running up Defendants' costs."); *Royal Ins. v. Lynnhaven Marine Boatel, Inc.*, 216 F.Supp.2d 562, 566-567 (E.D. Va. 2002) ("Plaintiffs, although ultimately unsuccessful in their litigation against the Defendants, proceeded vigorously in their claim under Count IV under an apparent good faith belief that the statute of repose did not apply to Defendants because they did not physically construct the boatel. Although the Court declined to accept their proposed interpretation of the Statute of Repose, it does not warrant the imposition of sanctions for what Plaintiffs perceived to be an arguable issue of law."); *id. O'Connor v. Columbia Gas Transmission Corp.*, 2009 WL 3055365, at * 4 (W.D. Va. 2009) ("based upon the submissions of the parties, the Court does not find that Plaintiffs' counsel possessed anything other than a good faith, if mistaken, belief that the Motion to Alter or Amend Judgment presented plausible grounds for alteration or amendment of the Court's ruling on Columbia's motion to dismiss."); *but compare Sweetland v. Bank of America*

*Corporation*, 241 Fed.Appx. 92, 97, at * 4 (4th Cir. 2007) ("In sum, Sweetland took the affirmative step of filing a baseless summary judgment motion on a count he knew he could not substantiate in the middle of the discovery process, while at the same time seeking to 'bolster' his case through intentional misrepresentations for the purpose of obtaining a settlement from the defendants.").

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above and at the hearing of this matter, Plaintiff respectfully requests the Court to deny Reuters' motion to dismiss.

DATED: August 27, 2021

BENJAMIN CROSSWHITE

By: */s/ Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net

*Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2021 a copy of the foregoing was served electronically in PDF upon counsel for the Defendant.

By: /s/ *Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net

*Counsel for the Plaintiff*