IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| BENJAMIN CROSSWHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 6:21-cv-00015 |
| ) | |
| REUTERS NEWS & MEDIA, INC., ) | By: Elizabeth K. Dillon |
| ) | United States District Judge |
| Defendant. ) | |

**MEMORANDUM OPINION**

Before the court is a motion to dismiss filed by defendant Reuters News & Media, Inc., incorrectly sued as Thomson Reuters.[1] (Dkt. No. 18.) The motion is fully briefed (Dkt. Nos. 18, 20, 21), and the parties have submitted briefing on supplemental authority (Dkt. Nos. 25, 26). For the reasons stated below, Reuters' motion will be granted.

I. BACKGROUND

Plaintiff Benjamin Crosswhite is a personal trainer in Lynchburg, Virginia. Crosswhite trained Jerry Falwell, Jr., the former president of Liberty University, and his wife Becki Falwell.

In 2019 and 2020, Mr. Falwell became the subject of several public controversies. (*See* Compl. ¶¶ 10, 12, 21, Dkt. No. 1.) On August 27, 2019, Reuters pulished an article on its website entitled "Exclusive: Falwell Steered Liberty University land deal benefiting his personal trainer." (Decl. of Patrick J. Curran, Ex. A, Dkt. Nos. 18-1, 18-2; Compl. ¶ 13.) This article reported on real estate transactions between Liberty University and Crosswhite that were approved by Falwell. Reuters also posted a link to the article on its Twitter account, and one of the authors, Aram Roston, re-

---

[1] Thomson Reuters is the parent company of Reuters News & Media, Inc. Because it appears that the correct and intended entity was served and has been represented in these proceedings, the court will sua sponte correct the misnomer. *See Blizman v. Travelers Home & Marine Ins. Co.*, Civil Action No. 3:19-CV-01539, --- F. Supp. 3d ----, 2021 WL 3861200, at *3 n.1 (M.D. Penn. Aug. 30, 2021).

tweeted the article.

On September 12, 2019, Reuters published an article on its website called "Exclusive: Falwell Blasted Liberty Student as 'Retarded,' Police Chief as 'Half-Wit' in Emails." (Curran Decl. Ex. C.) This article reported on Falwell's pattern of belittling Liberty University students and staff. The article also stated that Falwell "has been dogged by recent stories about his private dealings and his stewardship of Liberty," including "his role in steering a $1.2 million piece of university property to his personal fitness trainer. On August 27, Reuters reported how Falwell had helped his young personal trainer, Benjamin Crosswhite." (Compl. ¶ 14.) Reuters and Roston tweeted a link to the article.

Crosswhite filed this action on March 25, 2021, alleging claims for defamation. The complaint focuses on statements made in the articles regarding Falwell's favored treatment of Crosswhite. The complaint also mentions articles and tweets published by third parties after the publication of the articles. Crosswhite seeks compensatory damages in excess of $9,000,000 and $350,000 in punitive damages.

## II.  ANALYSIS

**A.  Motion to Dismiss**

To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff pleads factual content that allows the court to draw a "reasonable inference that the defendant is liable for the alleged misconduct." *Iqbal*, 556 U.S. at 678. In determining whether plaintiff has satisfied this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and "draw[] all reasonable factual inferences from those facts in plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it need not "accept the legal conclusions drawn from the facts" or "accept as true facts or

unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The court may consider the two Reuters articles and subsequent tweets of those articles because they are "integral to and explicitly relied on in the complaint." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

**B. Timeliness**

Under Virginia law, claims for defamation must be brought within one year "after the cause of action accrues." Va. Code § 8.01-247.1. A cause of action for defamation accrues on the date the "allegedly defamatory statements were published." *Lokhova v. Halper*, 441 F. Supp. 3d 238, 252 (E.D. Va. 2020), *aff'd* 995 F.3d 134 (4th Cir. 2021) (citing *Hatfill v. New York Times Co.*, 416 F.3d 320, 334 (4th Cir. 2005)). Here, the articles were published on August 27 and September 12, 2019. The Commonwealth of Virginia allowed tolling from March 16, 2020, through July 19, 2020, because of COVID-19. *See* https://www.vacourts.gov/news/items/covid/2020_0708_scv_seventh_order.pdf (In re: Seventh Order Extending Declarationof Judicial Emergency in Response to COVID-19 Emergency). This is an extension of 126 days that pushes the deadlines for these claims to be filed on or before December 30, 2020, for the August 27, 2019 article and January 15, 2021, for the September 12, 2019 article.[2] The extra time does not save Crosswhite's claims, which were filed in March 2021. Thus, the claims are barred by the statute of limitations.

Crosswhite argues that various re-tweets and hyperlinks bring his claims within the statute of limitations. The Fourth Circuit recently addressed similar arguments in *Lokhova*, 995 F.3d at 142–45.[3] The Court explained its determination that Virginia would follow the "single publication rule,"

---

[2] The tolling period means that the statute of limitations for Crosswhite's claims is 491 days (365 plus 126). There are 491 days between August 27, 2019, and December 30, 2020, and also between September 12, 2019, and January 15, 2021.

[3] Plaintiff's counsel in this case was plaintiff's counsel in *Lokhova*.

pursuant to which "subsequent distribution of a defamatory statement may continue to increase plaintiff's compensable damages," but the subsequent distribution "does not create independent actions or start the statute of limitations running anew." *Id.* at 142 (citing *Katz v. Odin, Feldman & Pitlleman, P.C.*, 332 F. Supp. 2d 909, 918 (E.D. Va. 2004)). The court then rejected the argument that hyperlinks and third-party tweets save the claims under the republication doctrine. Regarding hyperlinks, the court endorsed caselaw holding that "merely linking to an article should not amount to republication." *Id.* at 143 (citing 4 E-Commerce and Internet Law 37.08 (2020); *In re Phila. Newspapers*, 690 F.3d 161 (3d Cir. 2012)). "The public policy supporting the single publication rule and the traditional principles of republication dictate that a mere hyperlink, without more, cannot constitute republication." *Id.* Regarding re-tweets, the court held that if "each third party tweet containing the article were to constitute a republication, the multiplicity of lawsuits assuredly would be beyond overwhelming." *Id.* at 144.

Crosswhite directs the court to paragraph 23 of his complaint, which references an August 24, 2020 tweet by Reuters employee Lawrence Delevingne. *See* https://twitter.com/ldelevingne/status/1297949389605011457. The tweet states: "Other great reporting on Falwell & Liberty U. by @AramRoston @jschney." Crosswhite characterizes this tweet as doing more than providing a "mere hyperlink" to the 2019 articles. This 2020 tweet associates Crosswhite and the 2019 articles with a new article about the Fallwells' dealings with a "pool boy."[4] The 2020 tweet also tags other twitter accounts, including @AramRoston, @Reuters, and @specialreports, which plaintiff alleges further shows an intent to republish old content to new target audiences.

---

[4] *See* https://www.reuters.com/investigates/special-report/usa-falwell-relationship ("Business partner of Falwells says affair with evangelical power couple spanned seven years").

These arguments were addressed and rejected by the Fourth Circuit in *Lokhova*.[5]   In *Lokhova*, plaintiff argued that "whether the hyperlink in question included additional content that would constitute republication is a factual question that should survive a motion to dismiss."   995 F.3d at 143.   The court disagreed because the original article was hyperlinked in a later article, and as a result, "the hyperlink served as a reference for the New York Times' existing audience and did not direct the old article to a new audience."   *Id.*   Similarly, here, the 2020 tweet about the 2019 articles served as a reference for Reuters' existing audience.   The subsequent publication did not add or alter the original publication.   *Id.* at 142–43 ("[A] link is akin to the release of an additional copy of the same edition of a publication because it does not alter the substance of the original publication.") (citing *In re Phila. Newspapers*, 690 F.3d at 174).   The 2020 tweet does not contain the words "pool boy," nor does it include any other terms to add to the original article or suggest in any way that plaintiff was the "pool boy."   It merely states, "Other great reporting on Falwell & Liberty U. by @AramRoston @jschney."   (Compl. ¶ 23.)[6]

To the extent that Crosswhite relies upon tweets by third parties (i.e., tweets by individuals not associated with Reuters), the Fourth Circuit, as noted above, also found that third-party tweets do not constitute republication.   995 F.3d at 144.   In so doing, the court rejected the same argument advanced in this case by Crosswhite based on the Virginia Supreme Court decision in *Weaver v. Beneficial Finance Co.*, 98 S.E.2d 687 (Va. 1957).   "Ignoring for a moment that *Weaver* was decided over 60 years ago, well before the ubiquity of the Internet, this issue can be resolved pursuant to the terms of *Weaver* itself because there the court recognized a distinction when applying republication rules 'to newspapers and magazines' as opposed to individuals . . . .   Thus, we conclude *Weaver* does

---

[5] Reuters notes that pages 6 through 8 in Crosswhite's opposition brief are cut and pasted from the brief in *Lokhova*.

[6] The tweet also did not "tag" the @Reuters or @specialreports accounts; rather, it replied to them.

not require holding third party tweets constitute republication." *Lokhova*, 995 F.3d at 144 (internal citations omitted).

Finally, Crosswhite provides a recent Eighth Circuit case as supplemental authority in support of his republication theory. *Nunes v. Lizza*, 12 F.4th 890 (8th Cir. 2021). In *Nunes*, the court held that the complaint stated a claim for defamation based on a "tweet of a link to the original article" because the complaint "adequately alleges that Lizza intended to reach and actually reached a new audience by publishing a tweet about Nunes and a link to the article." *Id.* at 900. The court noted that *Lokhova* and other cases "do not hold categorically that hyperlinking to an original publication never constitutes republication." *Id.* As an initial matter, if *Nunes* is inconsistent with *Lokhova*, the court must follow the Fourth Circuit's holding in *Lokhova*. But *Nunes* is distinguishable in any event. In *Nunes*, the issue was whether defendant acted with "actual malice by republishing the article on his Twitter account after this lawsuit was filed." *Id.* at 899. The court reasoned that

> Lizza was on notice of the article's alleged defamatory implication by virtue of this lawsuit. The complaint alleges that he then consciously presented the material to a new audience by encouraging readers to peruse his 'strange tale' about 'immigration policy,' and promoting that 'I've got a story for you.' Under those circumstances, the complaint sufficiently alleges that Lizza republished the article after he knew that the Congressman denied knowledge of undocumented labor on the farm or participation in any conspiracy to hide it.

*Id.* at 900–01. Thus, the tweet in *Nunes* provided more than a "mere hyperlink;" it contained additional statements with potentially defamatory implications.[7] Not so the August 2020 tweet by Lawrence Delevingne, which merely refers to the article as containing "Other great reporting on Falwell & Liberty U."

---

[7] The full tweet stated: "I noticed that Devin Nunes is in the news. If you're interested in a strange tale about Nunes, small-town Iowa, the complexities of immigration policy, a few car chases, and lots of cows, I've got a story for you." *Nunes*, 12 F.4th at 900.

### III. CONCLUSION

For the above-stated reasons, the court will grant defendant's motion to dismiss. The court will issue an appropriate order.[8]

Entered: December 28, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[8] The court will dismiss this case with prejudice because the claims are time-barred.